CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 20, 2026

LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **KENNETH J. HARRIS,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:23cv00628** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CHADWICK DOTSON, Director,** | ) | **By: Robert S. Ballou** |
| **Respondent.** | ) | **United States District Judge** |

Kenneth J. Harris, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2019 convictions in Halifax County

Circuit Court for several drug and firearm offenses.  The respondent has filed a motion to

dismiss, to which the petitioner has responded.  The matter is now ripe for disposition.  Upon

consideration of the petition, the motion to dismiss, the response in opposition, and the record

from the state trial and appellate courts, I will grant the Motion to Dismiss because Fourth

Amendment issues are not cognizable in federal habeas, and his remaining issue was both

procedurally defaulted and lacking in merit.

## I.  BACKGROUND

### A.  Factual Background

The evidence at trial, interpreted in the light most favorable to the Commonwealth as the

prevailing party, is that officers arrived at Harris' home in Halifax County at 6:00 a.m. on

November 2, 2017, with a search warrant authorizing search of the home for drugs, drug

paraphernalia, records from drug sales, firearms, ammunition, and packing materials.  Harris was

home alone and awake when the officers arrived.  Special Agent R. B. George spoke with Harris

outside the home while other officers executed the search warrant inside.  George described their

conversation as cordial and said that Harris admitted that there was cocaine on a plate in the

bedroom, the remnant of drug sales he had conducted the previous night.  Harris said he had bought one-half ounce of cocaine in Danville for $650.  George, as an expert in the field of narcotics distribution, testified that a half ounce of cocaine could be broken down into ninety $20 bags for sale.  When George asked if any other contraband was in the house, Harris said a bag of marijuana was hidden in the back bedroom.

Officers searching the house found cocaine (weighing 0.93 gram, enough for approximately four $20 units) and a razor blade on a plate on top of a table or speaker, along with digital scales with white residue and a piece of mail with Harris's name and address.  In a dresser drawer in the same bedroom, they found a bottle of pills and some loose pills (later determined to be Tylenol with Hydrocodone and Buprenorphine and Naloxone).  The police found a pack of razor blades on the nightstand and ammunition for a nine-millimeter gun inside the nightstand.  They also found drug packaging materials in the bedroom.

In addition to drug materials in that bedroom, the police found two handguns under the mattress and two "long guns" in the corner behind a door.  A pair of pants in the bedroom had a wallet in the pocket, with Harris's identification and $435 in cash.  The marked money from a "controlled buy" the previous night was in the cash.  They also found a DeWalt drill that the informant had exchanged for cocaine the previous evening.

Elsewhere in the house, the police found a bag with three-quarters of an ounce of marijuana in another bedroom.  In the kitchen, they recovered two smoking devices from under the kitchen sink.  Based on the scales, packaging material, razor blades, and cash, George testified that the quantity of cocaine on the plate was inconsistent with personal use.

Harris's testimony at a motions hearing before trial, not believed by the trial court, denied the statements that Agent George said Harris had made.  He testified that the cocaine on the plate

2

was not his, and the person smoking it, whom he refused to identify, planned to come back for it later.  He said the money in his wallet came from his jobs.  He admitted prior felony convictions.

## B.  Procedural History

Following execution of the search warrant at his home, Harris was arrested on November 2, 2017, and held without bond on charges of possession of Schedule II controlled substances with intent to distribute, third or subsequent offense, in violation of Virginia Code § 18.2-248; possession of a firearm with controlled substances, in violation of Virginia Code § 18.2-308.4; and possession of a firearm after conviction of a non-violent felony within 10 years, in violation of Virginia Code § 18.2-308.2.  On March 27, 2018, he waived his preliminary hearing in Halifax General District Court.

On April 5, 2018, the grand jury indicted him for third or subsequent possession with intent to distribute cocaine, possession of a firearm during the commission of possession with intent to distribute cocaine, possession of a firearm after conviction of a *violent* felony, and a totally new charge, possession of firearm ammunition after conviction of a felony in violation of Virginia Code § 18.2-308.2(A).  On the motion of Harris's public defender, on June 15, 2018, the court ordered a psychological evaluation of Harris to determine competency to stand trial and sanity at the time of the offense.  He was found competent to stand trial.

The Commonwealth sought additional indictments against Harris, which the grand jury returned on September 6, 2018.  These indictments charged possession of marijuana, in violation of Virginia Code § 18.2-250.1; possession of Hydrocodone and Acetaminophen, a Schedule II controlled substance, in violation of Virginia Code § 18.2-250(A)(a); and possession of Buprenorphine and Naloxone, a Schedule III controlled substance, in violation of Virginia Code § 18.2-250(A)(b). Thereafter, his attorney filed a motion for specific exculpatory information

pertaining to the controlled buy made by a confidential informant. The motion sought the identity of the informant, history of any non-compliance by the informant, any known bias by the informant against Harris, identity of anyone who accompanied the informant to the controlled buy on November 1, 2017, and any other exculpatory information.  Counsel also filed a motion to suppress and a request for a *Franks* hearing,[1] alleging that the search warrant affidavit contained material falsehoods, to which the Commonwealth objected.  Before any hearings were held on the motions, Harris was appointed a new attorney, who was substituted as counsel on September 28, 2018.

On January 4, 2019, defense counsel filed a Motion to Compel production of audio and video containing any statements allegedly made by Harris during the controlled buy, noting that this evidence would be material to the *Franks* hearing and to the motion to suppress.  Counsel also filed a more detailed motion to suppress, alleging that the search warrant amounted to a general warrant, with no facts to support probable cause that drugs would be found in the house or that guns, ammunition, and other items specified in the warrant would be found in the home. At the motions hearing held on January 11, 2019, the trial court found that the affidavit for the search warrant was sufficiently specific and denied the Motion to Suppress.  Then, to support the *Franks* motion, Harris testified that he had not distributed anything to anyone during the 72 hours before the search warrant was issued and that he had not distributed drugs from his house in several years. Agent George testified that law enforcement had conducted four controlled

---

[1] A "*Franks* hearing" refers to a hearing in the trial court to determine the truthfulness of an affidavit used to support a search warrant; the name is drawn from *Franks v. Delaware,* 438 U.S. 154 (1978). *United States v. Sanders*, 107 F.4th 234, 245 n.9 (4th Cir. 2024).  In *Franks*, the Supreme Court held that a criminal defendant who makes a substantial preliminary showing that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included in the search warrant affidavit to show probable cause, the defendant was entitled to a hearing on the matter.  If he established intentional perjury or reckless disregard by a preponderance of the evidence, and if the affidavit is insufficient to establish probable cause without the false testimony, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.  438 U.S. at 155–56.

buys, the first being on October 5, 2017, and the last being on November 1, 2017. Although the state police tried to record the controlled buys while surveilling the transaction, the recording equipment malfunctioned because the batteries died, so they did not have any audio or visual recording of the controlled buy.[2] Counsel argued that the lack of any video or audio recording, plus Harris's testimony, rendered the affidavit deficient. The trial court ruled that he had not met the standard required by *Franks*.

The court presided over a bench trial immediately after the motions hearing, and the judge convicted Harris on all counts. Following consideration of a presentence report and sentencing hearing on April 18, 2019, the court sentenced Harris to 35 years, 12 months, and 30 days, but suspended 15 years, 12 months, and 30 days, conditioned on supervised probation for two years and good behavior for 40 years from Harris's release from incarceration, leaving an active sentence of 20 years (the mandatory minimum for the third-offense distribution and the two gun charges).

Harris appealed his conviction and sentence, arguing that the trial court erred by denying his *Franks* motion/motion to suppress and that the evidence was insufficient to support his conviction. The appellate court denied his petition. *Harris v. Commonwealth*, No. 1952-19-2

---

[2] The search warrant affidavit, signed by Special Officer W. D. Nunn, stated that:

> The material facts constituting probable cause that the search warrant should be made are:
>
> A Confidential Source of Information (CSI) has made a controlled purchase of suspected crack cocaine from Kenneth Harris inside the residence of [address] under the direction, control and surveillance of law enforcement officials within the last 72 hours. Law enforcement maintained audio and video surveillance during the incident. The crack cocaine was field tested and tested positive for cocaine. The CSI has purchased crack cocaine at this residence located at [address] in the past under the direction, control and surveillance of law enforcement. The CSI has been truthful with law enforcement.

Trial Ct. R. at 145.

(Va. Ct. App. June 17, 2020) (per curiam).  Likewise, the Supreme Court of Virginia refused his petition for appeal on the same issues.  *Harris v. Commonwealth*, No. 200908 (Va. S. Ct. March 2, 2021).

On January 20, 2022, Harris, by counsel, filed a petition for habeas corpus in the Halifax Circuit Court, raising challenges to the validity of the search warrant and claims of ineffective assistance of counsel.  On February 6, 2023, the Circuit Court dismissed the petition.  Harris filed his Notice of Appeal to the Supreme Court of Virginia on March 6, 2023.  The Circuit Court Clerk's office acknowledged receipt on March 7, saying "The Court has received your notice of Appeal and will send it to the Court of Appeals."  Habeas Cir. Ct. R at 73.  Thereafter, Harris mailed his brief to the Court of Appeals, which received the item on March 30.  On March 31, 2023, the appellate court's Deputy Clerk returned the petition to Harris, noting that the document was not in the proper form and that the Court of Appeals did not have jurisdiction over such matters; habeas petitions should be filed in the Circuit Court or in the Supreme Court of Virginia.

Upon receiving the letter from the Court of Appeals, Harris did not attempt to amend his submission to comply with the rules of court, nor did he submit his pleading to the Supreme Court of Virginia.  Rather, he called the Circuit Court Clerk's office several times to find out why they hadn't sent his petition for appeal to the appellate court.  Pet. at 1.  He claims he got the run-around several times, and a clerk finally told him that the petition was received by the Court of Appeals on July 6, 2023.  The Circuit Court habeas record, however, documents that the appeal file was electronically submitted to the Supreme Court of Virginia, receipt confirmed, on June 6, 2023.  Habeas Cir. Ct. R. at 74–75.  On July 25, 2023, the Supreme Court returned the record to Halifax Circuit Court, noting that no petition for appeal was ever filed, and the time in which to do so had expired.  Dkt. No. 20-6.

Harris initiated his habeas claim in federal court by sending a letter to the United States District Court for the Eastern District of Virginia which it received on August 17, 2023, and initially docketed as a Complaint.  Subsequently, the court reclassified the matter as a habeas petition and transferred the case to this Court.  Harris's letter asked the Court to review and grant his petition and, if granted, to give him a reasonable bond.  Presumably, the petition he was asking the court to grant was the one attached to his letter, Dkt. 1-3, a copy of the pleading mailed to and returned by the Court of Appeals.  That pleading argued the following two issues, which he raised in his Circuit Court habeas petition:

1.  All evidence should have been suppressed by the trial court because the warrant lacked probable cause and was based on a false affidavit.

2.  His trial attorney provided ineffective assistance of counsel by failing to file for discovery with a specific request for exculpatory evidence and impeachment evidence.

Harris repeated and amplified his arguments on these two issues in his opposition to the Motion to Dismiss.

## II.  DISCUSSION

### A.  Procedural Requirements for Federal Habeas Review

#### 1.  Standard of Review

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as

7

determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Further, factual issues decided by the state court must be presumed to be correct, and the petitioner has the burden of rebutting this assumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. **Timeliness**

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. Typically, and in this case, the one year begins to run when the state court judgment becomes final at the conclusion of direct review or by expiration of the time for seeking such review. *Id.* The time during which "a properly filed application for State post-conviction" relief is pending shall not be counted toward the statute of limitations period. 28 U.S.C. § 2244(d)(2).

### 3. **Exhaustion/Procedural Default**

Finally, a federal district court reviewing a § 2254 petition is limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interest in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is

entitled to seek federal habeas relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  If a petitioner still has the right to pursue a state remedy by any available procedure, he has not exhausted his claim.  28 U.S.C. § 2254(c).  Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court.  *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995).  Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default.  If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review.  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court.  *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998).  A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted.  *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice as a result of the claimed federal violation.  *Coleman*, 501 U.S. at 750.  Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner.  *Id.* at 756–57.  To show prejudice to overcome procedural default, a petitioner must show that the

claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**B.  Timeliness of Harris's Petition**

Harris timely filed his petition.  Had he filed his state petition on March 10, 2022, as

suggested by the respondent (Dkt. No. 20 at 7 n.1), the petition would not have been timely.

However, the Circuit Court record shows that the petition was filed January 20, 2022, nearly two

months earlier.  At the time the Supreme Court of Virginia denied his direct appeal on March 2,

2021, Harris had 150 days to file a Petition for Certiorari in the United States Supreme Court

because of the COVID pandemic.  Misc. Order Addressing the Extension of Filing Deadlines,

2020 US ORDER 0011 (C.O. 0011), March 19, 2020; *see also* Misc. Order Rescinding COVID-

19 Related Orders, 2021 US ORDER 0061 (C.O. 0061), April 15, 2021.  Therefore, the

expiration of the time for seeking review on direct appeal expired on July 30, 2021, and his

federal habeas statute began to run on that date.  He filed his state habeas petition in the Halifax

Circuit Court 174 days later, on January 20, 2022.  The statute of limitations stopped running and

would pick up again where it left off when the properly filed habeas petition was no longer

pending.  *See McHoney v. South Carolina*, 518 F. Supp. 2d 700, 703–04 (D.S.C. 2007).

The Circuit Court dismissed the state habeas on February 6, 2023.  Although Harris filed

a Notice of Appeal, he never filed his Petition for Appeal in the Supreme Court of Virginia, and

the Court returned the record to the Circuit Court on July 25, 2023.  The effect of this is that the

state habeas proceedings were no longer properly pending after February 6, 2023.  *See Escalante

v. Watson*, 488 F. App'x 694, 698 (4th Cir. 2012) (holding that a Petition for Appeal which did

not comply with the rules of court was not properly filed, and that petitioner was not entitled to

any tolling after the date of the Circuit Court's denial of the habeas petition).  The statute began

running again on February 6, 2023, with 191 days remaining.  The last day to file the petition

was August 16, 2023.  The court received Harris's petition on August 17; given the benefit of the

mailbox rule, the petition was timely filed.  The court takes judicial notice that Harris had to

place the petition in the prison mail on or before August 16, 2023, for it to arrive at the court on

August 17.

## C. **Exhaustion**

Of the two issues raised in his petition, only the first was exhausted in the state's highest

court.  Harris raised his Fourth Amendment challenge to the search warrant on direct appeal,

presenting it to the Supreme Court of Virginia, which exercised its discretion not to consider the

matter.  Having fairly presented the issue to the highest court on direct appeal, he was not

required to raise it again in the state habeas proceeding to exhaust his remedies.  *See Baker v.*

*Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (noting that "the Court has held that the exhaustion

requirement does not demand that a petitioner raise on collateral review a claim that has been

fully considered by the state court on direct review.").

His second claim, ineffective assistance of counsel, was not exhausted; rather, it was

procedurally defaulted because of Harris's failure to perfect his state habeas appeal to the

Supreme Court of Virginia by filing a timely *petition for appeal* in that court, as required by

Supreme Court of Virginia Rule 5:17.  The courts have long recognized that Rule 5:17 is an

independent and adequate state law ground for a state court's dismissal of a petitioner's claims.

*O'Dell v. Netherland*, 95 F.3d 1214, 1244 (4th Cir. 1996).  Because of Harris's failure to comply

with Rule 5:17, the state's highest court never considered his ineffective assistance of counsel

claim on the merits.  As previously noted, a federal habeas court may not consider a procedurally

defaulted and unexhausted claim unless the petitioner establishes cause and prejudice.  *Coleman*,

501 U.S. at 750.

Harris attempts to blame the Halifax Circuit Court Clerk's office for his failure to file a

timely petition in the Supreme Court of Virginia.  Cause requires the existence of something,

external to the defense, preventing compliance with the court's rules.  *Coleman*, 501 U.S. at 753.

While the Clerk's office erred in stating that the Court would send his Notice of Appeal to the

Court of Appeals, that did not prevent Harris from complying with the rules.  When he filed his

Notice of Appeal, Harris correctly asked that his records be forwarded to the Virginia Supreme

Court.  Habeas Cir. Ct. R. at 70.  Even if he was confused by the Clerk's letter of March 7,

acknowledging receipt of the Notice, any confusion about the proper court was reasonably

cleared up by the March 31, 2023, letter from the Clerk of the Court of Appeals, returning his

materials to him.  That letter advised that his paperwork was not in the form required, referred

him to the relevant habeas statutes, and told him that habeas petitions could be filed in either the

circuit court where he was convicted or in the Supreme Court of Virginia, because the Court of

Appeals had limited jurisdiction.  Dkt. No. 20-5 at 9.

Harris obviously received this letter, as he references it in his initial § 2254 petition/letter

in this court.  *See* Pet. at 1.  Under Rule 5:17(a), Harris had 90 days from the judgment date to

file his petition for appeal.  The 90 days expired on May 7, 2023, a Sunday, giving him until

Monday May 8, 2023, to mail his petition to the Supreme Court of Virginia, but he never did so.

He did not even send the petition that the Court of Appeals returned to him, choosing instead to

call the circuit court clerk's office to demand why his papers had not been forwarded.

Undoubtedly, some of Harris's confusion seems to be distinguishing his petition for

habeas from a petition for appeal.  They are two separate documents which are separately

important in their function.  The Supreme Court of Virginia received the circuit court habeas record on June 6, 2023.  That record included the original petition for habeas corpus which initiates Harris's legal action challenging his conviction.  What the court never received was a petition for appeal which invokes the jurisdiction of the Supreme Court to review the circuit court denying the petition for a writ of habeas corpus.  Rule 5:17(c) details the contents required in a petition for appeal: Assignments of Error, Table of Contents and Table of Authorities, Nature of the Case and Proceedings Below, Statement of Facts, Authorities and Argument, and Conclusion.  The pleading that Harris submitted to the Court of Appeals did not contain all these sections. Most importantly, his pleading contained no Assignments of Error, brief statements explaining what the habeas trial court had done wrong, or in other words, what determinations of fact or decisions of law the lower court had made that Harris disagreed with.  Had the Supreme Court received the pleading that Harris filed in the Court of Appeals, the Court would have rejected it outright, resulting in procedural default just as surely as an untimely or never-filed petition, or possibly issued an order under Rule 5:1A giving him an opportunity to correct the pleading.

In the time between March 31 and May 8, 2023, a period of more than one month, Harris did not correct the form of his petition for appeal, nor did he attempt to file it in the correct court after notice that the Court of Appeals was not the correct court.  While recognizing that Harris is representing himself and is not a lawyer, the federal courts have long held that ignorance of the law, even by a *pro se* prisoner, is not a circumstance external to the defense.  *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (discussing cause external to the defense in the context of equitable tolling).  Accordingly, Harris has failed to establish cause for his procedural default.

13

As will be explained further in the next section, Harris cannot show prejudice, either, because his ineffective assistance of counsel claim fails on the merits.  A federal habeas court cannot consider defaulted and unexhausted claims as grounds for relief, but a habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust" his state court remedies.  28 U.S.C. § 2254(b)(2).

**D.  Claims Raised by Harris**

**1.  Validity of the Search Warrant**

Although Harris properly exhausted this issue, claims that evidence was obtained in an unlawful search and seizure are not cognizable in federal habeas cases, as long as the state provided the petitioner a full and fair opportunity to litigate his Fourth Amendment claim in the state courts.  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  Harris was given this opportunity, and he presented his case to the trial judge before his trial, to the Court of Appeals, and to the Supreme Court of Virginia on direct appeal.  He presented the issue again in his state habeas petition in the circuit court.  Accordingly, I must dismiss this claim.

**2.  Ineffective Assistance of Counsel**

To prevail on his claim of ineffective assistance of counsel, Harris must show that the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of facts, in light of the evidence presented to the state court.  28 U.S.C. § 2254(d)(1)-(2).  A decision is contrary to federal law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state's decision is

14

an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Likewise, the federal court must presume that the state court's factual findings are correct, and this presumption can be overcome only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

I determine the state court's finding of facts and conclusions of law from the circuit court's opinion denying Harris's state habeas petition. The state habeas court found that Harris's first attorney, with the Public Defender's Office, filed a Motion for Specific Exculpatory Information, requesting information about the informant and the buy on which the search warrant was based, and he filed a *Franks* motion alleging that the search warrant was issued based on information that was a deliberate falsehood or obtained with reckless disregard for the truth. A new attorney substituted into the case as counsel for Harris, and he filed a Motion to Compel, demanding production of the video and audio recordings of the buy. He also filed a Motion to Suppress, arguing that the search warrant was not based on sufficient probable cause and amounted to a general warrant. Counsel argued all the motions, including the *Franks* motion filed by prior counsel, on the same day. Finally, the habeas court stated that the trial judge determined Agent George and Corporal Nunn to be credible and found Harris's testimony was not. Habeas Cir. Ct. R. at 60-62.

In addressing the claim for ineffective assistance of counsel, the state habeas court recited the proper standard of review: A petitioner alleging ineffective assistance of counsel must show

that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, the state court recognized that evaluation of counsel's performance must be "highly deferential." *Id.* at 688. Finally, in determining whether an attorney's performance fell below an objective standard of reasonableness, the court stated that the question is "whether an attorney's representation amounted to incompetence under prevailing professional norms," not whether it was the best representation possible. Habeas Cir. Ct. R. at 63. Applying these legal standards, the court concluded that, "Far from failing to act as an effective adversary . . ., Harris's attorneys attacked the search of Harris's home and fought the evidence against him at every step of the litigation." *Id.* at 64.

Harris claimed that counsel was ineffective for failing to argue that Nunn's testimony had to be considered inherently incredible, and the search warrant based on false testimony, because Nunn's affidavit in support of the search warrant said that the task force "maintained audio and video surveillance of" the controlled buy, when the recording equipment had actually malfunctioned, producing no video or audio recording, according to Agent George's testimony. In response to this argument, the state court said this was not incontrovertible evidence that Nunn committed perjury, and the record did not support a finding of perjury. *Id.* at 65. This response was a reasonable determination of facts based on the evidence presented. Officers can maintain visual and auditory surveillance at the scene, notwithstanding later determination that the events were not recorded. Nor was there any evidence suggesting that Nunn had been advised before getting the warrant that the recording had failed. Absent such evidence, the habeas court's conclusion that Harris failed to show deficient performance was certainly reasonable. While

16

Harris may have preferred for his attorney to be more accusatory in challenging the veracity of the affidavit, counsel's performance was "well within the 'wide range of reasonable professional assistance' allowed under *Strickland*." *Id.* As the habeas court stated, Harris's argument amounted to nothing more than an effort to "grad[e] the quality of his counsel's trial presentation," and that is insufficient to show deficient performance. *Id.*

Finding nothing unreasonable about the state habeas court's determination of facts and conclusions of law, I could not find in favor of Harris on this claim even if he had not procedurally defaulted the issue.

### III. CONCLUSION

Harris's Fourth Amendment claim is not cognizable on federal habeas review. His claim of ineffective assistance of counsel was procedurally defaulted, and he has shown neither cause nor prejudice to excuse that default. Accordingly, I will grant the respondent's Motion to Dismiss.

I decline to issue a certificate of appealability, because Harris has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural rulings to be debatable or wrong.

A separate Final Order will be entered this date.

Entered:  March 19, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

17